IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOHNNY CYRUS, | : | CIVIL ACTION NO. **3:CV-06-2051** |
| Plaintiff | : | (Judge McClure) |
| v. | : | (Magistrate Judge Blewitt) |
| J. W. FREYNICK, | : | |
| Defendant | : | |

## **REPORT AND RECOMMENDATION**

**I. Background.**

Plaintiff, Johnny Cyrus, formerly an inmate at the Federal Correctional Institution at Allenwood, White Deer, Pennsylvania ("FCI-Allenwood"), filed, *pro se*, the instant civil rights action under *Bivens*[1], pursuant to 28 U.S.C. § 1331, on October 19, 2006.[2]

---

[1] *Bivens v. Six Unknown Named Agents of Fed. Bur. of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999 (1971). Plaintiff has also filed five other actions with this Court, namely 06-1698, 06-1665, 06-1697, 06-2022, 06-2052, M.D. Pa.
Plaintiff incorrectly styled his present action as being also under § 1983. (Doc. 1, p. 1). As we previously noted, a § 1983 civil rights suit is against state officials and not federal officials of the Bureau of Prisons ("BOP"), as Plaintiff is naming in this case. *See Holocheck v. Luzerne County Head Start, Inc.*, 385 F. Supp. 2d 491, 498-499 (M. D. Pa.).

[2] After he filed this case, Plaintiff was transferred to FMC-Butner, North Carolina. All of Plaintiff's claims in this case occurred while he was confined at FCI-Allenwood.

The Plaintiff also filed an application for leave to proceed *in forma pauperis*. (Doc. 2).[3] The Complaint consisted of four handwritten pages, which included two pages of the Statement of Facts. (Doc. 1).[4]

The Complaint alleged that on August 3, 2006, Plaintiff was having chest pain and the SHU CO's called Defendant P.A. J. W. Freynik. Defendant Freynik took Plaintiff to the clinic but did not give him oxygen to help him breathe. (Doc. 1. P. 3). Plaintiff claimed that "in retaliation, for me filing on (his friends) staff members P.A. Freynik, in front of the nurses, he deliberately, sticks his finger, in the corner of my right eye, like he was trying to pull it out, of the socket. He pressed, so hard, it was more, painful then the chest pains." Plaintiff claimed that after this incident, Defendant and the nurses laughed at him. Plaintiff averred that Defendant Freynik then made a fist and with both hands put his knuckles in his chest ands started rubbing real hard, "trying to crush my chest in." Plaintiff stated that they all laughed, and he was caused severe pain. Plaintiff averred that he still has trouble with his right eye and chest as a result of Defendant Freynik's conduct. (*Id*., p. 4). Plaintiff indicated that on August 3, 2006, he was taken to the hospital and stayed there for three days. Plaintiff averred that he asked a doctor at the hospital if Defendant Freynik's treatment of him was proper as "some kind of medical treatment," and the doctor stated "no." Plaintiff

---

[3]By separate Order, we granted Plaintiff's Motion for *in forma pauperis*. (Doc. 2).

[4]In his Complaint, similar to most of his other Complaints filed with this Court, Plaintiff indicated that he had not fully exhausted the grievance procedure available at FCI-Allenwood. (Doc. 1, p. 1). In our initial October 2006 Report and Recommendation, we noted that since Plaintiff's claims in this case arose on August 3, 2006, and he filed his action on October 19, 2006, it did not seem that Plaintiff could have fully exhausted all of his available BOP administrative remedies during this time period.

concluded that he had permanent eye damage and had severe pain. (*Id*.).

Plaintiff averred that Defendant Freynik gave him improper medical care for his chest pain and that he deliberately injured his right eye as retaliation against him due to his lawsuits he filed against prison staff. As stated, Plaintiff did not specifically state what Defendant Hogsten did to retaliate against him or to deny him proper medical care.

Plaintiff named as Defendants the United States, Warden Hogsten and P.A. Freynik. The stated two individual Defendants are both employed at FCI-Allenwood.

Since Defendant Hogsten was not alleged to have played any role in the denial of Plaintiff's medical care on August 3, 2006, or to have engaged in any conduct amounting to a violation of Plaintiff's Eighth Amendment Constitutional rights, we recommended that this Defendant be dismissed. Further, we indicated in our Report and Recommendation screening Plaintiff's instant Complaint that the United States was not a proper Defendant in a *Bivens* action. The Complaint did not sufficiently specify any conduct, wrongful or otherwise, of Defendant Hogsten. This Defendant was not alleged to have played any role in the alleged retaliatory injury to Plaintiff or to have played any role in the denial of medical care to Plaintiff after his August 3, 2006, chest pain. Nor was this Defendant alleged to have been aware at the time of the incident that the medical staff was denying him proper treatment for his chest pain or that P.A. Freynik was causing him injuries. Plaintiff did not even mention Defendant Hogsten in his pleading, and he did not aver that he requested Defendant Hogsten to give him medical care and that she denied it. Nor did Plaintiff allege any serious or permanent injuries as a result of any conduct by Defendant Hogsten. Rather, Plaintiff stated that he was in severe pain from Defendant Freynik's conduct. Plaintiff did not state

that Defendant Hogsten was aware that a prison staff member was retaliating against him by injuring him on August 3, 2006.

As relief, Plaintiff sought compensatory damages in the amount of $1 million for medical malpractice, pain and suffering, assault, and cruel and unusual punishment, as well as retaliation. (*Id*., p. 5).

We reviewed Plaintiff's pleading under the Prison Litigation Reform Act of 1995[5] (the "PLRA"), and found, under 28 U.S.C. §1915(e)(2)(B), that it contained fatal deficiencies as to the Defendant Hogsten, namely the failure to state an Eighth Amendment deliberate indifference claim and a First Amendment retaliation claim against this Defendant. We found that the United States could not be named as a Defendant in this *Bivens* action. We also found that Plaintiff should be allowed to proceed with only respect to his Complaint against Defendant Freynik, the medical staff member who allegedly denied him proper medical care on August 3, 2006, and retaliated against him by injuring his right eye.

Accordingly, on October 27, 2006, we issued a Report and Recommendation and recommended that this case be dismissed as to Defendant Hogsten, as the Plaintiff has failed to state a retaliation claim under the First Amendment and a claim under the Eighth Amendment against this Defendant. We also recommended that this case be dismissed as against Defendant United States. We further recommended that Plaintiff be allowed to proceed with his Complaint as against Defendant Freynik with respect to his Eighth Amendment and First Amendment retaliation claims.

---

[5]Pub. L. No. 104-134, 110 Stat. 1321 (April 26, 1996).

On November 30, 2007, the District Court issued an Order and adopted our Report and Recommendation. (Doc. 8). Plaintiff's relief requests for $1 million and $40,000 were also stricken from the Compliant. Plaintiff's medical malpractice claim was dismissed without prejudice. Subsequently, we issued an Order on December 5, 2006, in which we granted Plaintiff's *in forma pauperis* motion and directed service on Defendant Freynik. (Doc. 9). Defendant Freynik was served on January 12, 2007. (Doc. 12).

On February 12, 2007, Defendant Freynik filed a Summary Judgment Motion pursuant to Fed.R.Civ.P. 56(b). **(Doc. 14).** Defendant filed his support Brief and Statement of Material Facts ("SMF") with exhibits on February 27, 2007. (Docs. 18 & 19). Plaintiff filed his opposition Brief and exhibits on April 12, 2007. (Doc. 23).[6] Defendant Freynik's Summary Judgment Motion is ripe for disposition.

## II. Section 1331 Standard.

Under *Bivens*, the District Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 to entertain an action brought to redress alleged federal constitutional or statutory violations by a federal actor under *Bivens, supra*. Pursuant to *Bivens*, "a citizen suffering a compensable injury to a constitutionally protected interest could invoke the general federal question jurisdiction of the district court to obtain an award of monetary damages against the responsible federal official." *Butz v. Economou*, 438 U.S. 478, 504 (1978). A *Bivens*-style civil rights claim is the federal equivalent of an action brought pursuant to 42 U.S.C. § 1983 and the same legal principles have been held

---

[6]Copies of Plaintiff's opposition Brief and exhibits were captioned and filed in this case as well as three of his other cases pending before this Court, namely 06-1665, 06-1698 and 06-2265.

to apply. *See, Paton v. LaPrade*, 524 F.2d 862, 871 (3d Cir. 1975); *Veteto v. Miller*, 829 F.Supp. 1486, 1492 (M.D. Pa. 1992); *Young v. Keohane*, 809 F.Supp. 1185, 1200 n. 16 (M.D. Pa. 1992). In order to state an actionable *Bivens* claim, a plaintiff must allege that a person has deprived him of a federal right, and that the person who caused the deprivation acted under color of federal law. *See West v. Atkins*, 487 U.S. 42, 48 (1988); *Young v. Keohane*, 809 F.Supp. 1185, 1199 (M.D. Pa. 1992).

### III. Motion for Summary Judgment Standard.

The court may grant a motion for summary judgment if the pleadings, depositions, answers to interrogatories, admissions on file, and any affidavits show that there is no genuine issue as to any material fact. Fed.R.Civ.P. 56(c). An issue of fact is "`genuine' only if a reasonable jury, considering the evidence presented, could find for the nonmoving party." *Childers v. Joseph*, 842 F.2d 689, 693-694 (3d Cir. 1988) (*citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).

The burden of proving that there is no genuine issue of material fact is initially upon the movant. *Forms, Inc. v. American Standard, Inc.*, 546 F. Supp. 314, 320 (E.D. Pa. 1982), *aff'd mem.* 725 F.2d 667 (3d Cir. 1983). Upon such a showing, the burden shifts to the nonmoving party. *Id*. The nonmoving party is required to go beyond the pleadings and by affidavits or by "depositions, answers to interrogatories and admissions on file" designate "specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e).

In determining whether an issue of material fact exists, the court must consider the evidence in the light most favorable to the nonmoving party. *White v. Westinghouse Electric Company*, 862 F.2d 56, 59 (3d Cir. 1988). In doing so, the court must accept the nonmovant's allegations as true

and resolve any conflicts in his favor. *Id.*, *quoting Gans v. Mundy*, 762 F.2d 338, 340 (3d Cir. 1985), *cert. denied,* 474 U.S. 1010 (1985); *Goodman v. Mead Johnson & Co.*, 534 F.2d 566, 573 (3d Cir. 1976) *cert. denied*, 429 U.S. 1038 (1977).

Under Rule 56 summary judgment must be entered where a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celetox Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

## IV. Material Facts.

Since, as stated, Defendant has filed his SMF in support of his Summary Judgment Motion (Doc. 19, ¶'s 1.-22.), and his facts are properly supported by citation to the BOP regulations and to evidence, we shall adopt as our own all of Defendant's facts contained in his SMF that are supported by citation to evidence and that are not disputed by Plaintiff in his opposition Brief and through his evidence, *i.e.* his Exhibits. (Doc. 23). To the extent that Plaintiff's evidence disputes Defendant's facts detailed in his SMF, we shall not adopt Defendant's facts as our own.

We find that Plaintiff, in his response to Defendant's SMF contained in his Brief, has not properly responded, paragraph by paragraph, to any of Defendant's SMF as required by Local Rule 56.1 of M.D. Pa. (Doc. 23).[7] As stated, Defendant has offered evidentiary support for his stated factual paragraphs contained in his SMF. (Doc. 19, pp. 1-5). Defendant has shown that Plaintiff did not fully and properly exhaust his BOP administrative remedies with respect to the two stated claims against him. Since Defendant's SMF's are supported by evidence and since Plaintiff has not

---

[7]Plaintiff is deemed as being well aware of all of the Local Rules of this Court based on his several cases he has filed in the M.D. Pa.

and resolve any conflicts in his favor. *Id.*, *quoting Gans v. Mundy*, 762 F.2d 338, 340 (3d Cir. 1985), *cert. denied,* 474 U.S. 1010 (1985); *Goodman v. Mead Johnson & Co.*, 534 F.2d 566, 573 (3d Cir. 1976) *cert. denied*, 429 U.S. 1038 (1977).

Under Rule 56 summary judgment must be entered where a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celetox Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

## IV. Material Facts.

Since, as stated, Defendant has filed his SMF in support of his Summary Judgment Motion (Doc. 19, ¶'s 1.-22.), and his facts are properly supported by citation to the BOP regulations and to evidence, we shall adopt as our own all of Defendant's facts contained in his SMF that are supported by citation to evidence and that are not disputed by Plaintiff in his opposition Brief and through his evidence, *i.e.* his Exhibits. (Doc. 23). To the extent that Plaintiff's evidence disputes Defendant's facts detailed in his SMF, we shall not adopt Defendant's facts as our own.

We find that Plaintiff, in his response to Defendant's SMF contained in his Brief, has not properly responded, paragraph by paragraph, to any of Defendant's SMF as required by Local Rule 56.1 of M.D. Pa. (Doc. 23).[7] As stated, Defendant has offered evidentiary support for his stated factual paragraphs contained in his SMF. (Doc. 19, pp. 1-5). Defendant has shown that Plaintiff did not fully and properly exhaust his BOP administrative remedies with respect to the two stated claims against him. Since Defendant's SMF's are supported by evidence and since Plaintiff has not

---

[7] Plaintiff is deemed as being well aware of all of the Local Rules of this Court based on his several cases he has filed in the M.D. Pa.

properly responded to them, we shall accept all of Defendant's SMF's as undisputed. We shall incorporate them herein by reference and shall not repeat them herein. (Doc. 19, pp. 1-5).

In his Brief, Plaintiff responds to Defendant's SMF regarding the BOP Administrative Remedy process and and its statements that Plaintiff failed to properly exhaust his Administrative remedies with respect to his present claims. Plaintiff simply states that this administrative remedy "procedure is a joke." (Doc. 23, p. 1). Plaintiff does not dispute Defendant 's SMF and its statements that all three (3) of Plaintiff's Administrative remedies filed after the August 3, 2006 incident alleged in this case, that may have been relevant to Defendant's alleged conduct, were rejected due to Plaintiff's improper filing of them.[8] Rather, Plaintiff questions the appropriateness of the rejections he received from the BOP Regional Director stating that the matters raised in his administrative remedies were not sensitive, since he alleged assaults, threats and harassment. (Doc. 23, p. 3). Thus, Plaintiff argues that his Administrative remedies claiming threats and assaults should not have been rejected by the Regional Office, as they undisputedly were rejected, since they were sensitive issues. (*Id*.).

Plaintiff also states that he has been retaliated against by BOP staff members that he has filed Administrative remedies against and filed civil actions against. (*Id*., pp. 1-2). Plaintiff states that staff members "make your Administrative remedys (sic) disappear" and that he indicated on his civil

---

[8] In his SMF, Defendant notes that the specific staff conduct which was the subject of Plaintiff's three (3) stated Administrative remedies is not known, since actual copies of rejected Administrative remedies are not maintained. Defendant's evidence supports this claim. (Doc. 19, p. 3, n. 1 and Ex. 1, ¶'s 10., 13.). However, Defendant has established through his evidence that the stated three (3) administrative remedies Plaintiff filed after the August 3, 2006 incident are the only possible ones that could relate to Plaintiff's claims asserted in this case.

actions that his Administrative remedies were never answered because BOP staff never filed them. He states that he went "to the next level outside of jail for help and they rejected it at that level." He states that prison staff are "not going to let you file on they (sic) friends" in the prison. Plaintiff states that "Administrative remedys (sic) should be run by inmates or an outside agency so it will be filed." (*Id*., p. 2).

In his Brief, Plaintiff concludes that the BOP Administrative Remedy process "is a very corrupt BOP system." (*Id*., p. 4).

Significantly, Plaintiff does not state in his Brief if any of his three (3) rejected Administrative remedies he received from the Regional Office raised his two claims he asserts against Defendant Freynik in this case. Nor does Plaintiff state that any of his Administrative remedies which allegedly disappeared and were not filed by staff involved his claims against Defendant Freynick. Further, Plaintiff does not implicate Defendant Freynick with any alleged improper handling and failing to file his Administrative remedies. Moreover, Plaintiff does not dispute Defendant's evidence which shows that he was instructed how to properly proceed with respect to his administrative remedies, and that he failed to do so. (Doc. 19, pp. 3-4).

Consequently, we accept as undisputed Defendant's SMF and find that it is supported by evidence. We find that it is undisputed that, of the three (3) possible Administrative remedies raising Plaintiff's instant claims, which Plaintiff filed after the alleged incident in this case, none were properly filed and none were exhausted. Nor does Plaintiff's evidence, Exs. 1-3 attached to his Brief (Doc. 23), contest Defendant's SMF. Plaintiff's exhibits are copies of three articles about other inmates in the custody of the BOP, and the BOP staff's alleged poor treatment of inmates. None

of Plaintiff's exhibits deal with Plaintiff's alleged mistreatment by BOP staff, and one of his exhibits controvert our Defendant's SMF, which shows that Plaintiff did not exhaust his Administrative remedies with respect to this two claims against Defendant. Thus, we find Plaintiff's exhibits to be irrelevant to this case and find that they do not contest Defendant's evidence. Therefore, we accept all of the stated facts contained in Defendant's SMF (Doc. 19, ¶'s 1.-22.) since they are supported by its evidence, and since they are not controverted by Plaintiff's response to Defendant's SMF or by his evidence (*i.e.*, his three (3) Exhibits), and we will adopt them as our own herein. *See U.S. ex rel. Paranich v. Sorgnard*, 396 F. 3d 326, 330, n. 5 (3d Cir. 2005) (under M.D. Pa. L.R. 56.1, the Third Circuit noted that the District Court adopted all the facts of one party that were not clearly disputed by the other party with sufficient citation to the record).[9] Therefore, we adopt the following undisputed facts derived from Defendant's SMF (Doc. 19) as our own and incorporate them herein by reference:  Paragraphs 1.-22.

      As stated, while Plaintiff generally argues that his Administrative remedies regarding assaults, threats and harassment by staff should not have been rejected by the Regional Office as not constituting sensitive issues, he does not show that any of these Administrative remedies related to the unconstitutional conduct he alleges against Defendant Freynick in this case. Nor does Plaintiff explain why he did not properly re-file any of the stated three (3) Administrative remedies after he was undisputedly advised and instructed as to how to properly file them.

---

[9]*See also Paranich* District Court case at  286 F. Supp. 2d at 447, n. 3.

**V. Discussion.**

As we have repeatedly noted in our prior Reports and Recommendations when screening Plaintiff's cases, it is well-settled that the Plaintiff must exhaust his administrative remedies prior to filing a civil rights suit. In *Porter v. Nussle*, 534 U.S. 516, 532 (2002), the Supreme Court reiterated that the exhaustion requirement under § 1997e(a) applies to all actions regarding prisons conditions, including § 1983 actions or actions brought pursuant to any other federal law. The *Porter* Court held that "the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Id.; Woodford v. Ngo,* 126 S Ct. 2378 (2006); *Fortune v. Bitner*, 2006 WL 2769158, *7 (M.D. Pa.)("The PLRA mandates that inmates 'properly' exhaust administrative remedies before filing suit in federal court.")(citation omitted). Further, the Defendant has the burden to plead exhaustion as an affirmative defense. *See Ray v. Kertes*, 285 F.3d 287, 295 (3d Cir. 2002); *Fortune v. Bitner*, 2006 WL 2769158, *7.

We find that Defendant Freynick has met his burden and has shown that Plaintiff's Eighth Amendment and First Amendment claims against him which arose on August 3, 2006, *i.e.* his denial of proper medical care on August 3, 2006, and the retaliation claim, were not properly exhausted. Defendant has shown that Plaintiff did not pursue all of his available BOP administrative remedies before he filed this action. Indeed, Plaintiff is well aware of the PLRA exhaustion requirement based on our screening of his prior cases he has filed with this Court.

Since Defendant has correctly stated the BOP Administrative Remedy process in his Brief (Doc. 18, pp. 2-3), and since his evidence has detailed it (Doc. 19-2, Ex. 1, ¶'s 6.-8.), we shall not

11

repeat it herein. Further, Plaintiff does not dispute the BOP Administrative Remedy process as outlined in Defendant's Brief. As stated, Plaintiff only questions why his unspecified Administrative remedies were rejected by the Regional Office as not being sensitive when he states they involved assaults and threats by unnamed staff. While Plaintiff does not show that any of the rejected Administrative remedies had anything to do with his claims against Defendant Freynick, he still had available recourse with respect to his three (3) stated Administrative remedies, according to Defendant's undisputed evidence, in that he could have re-filed them properly as he was instructed to do. Thus, we find that, to the extent that Plaintiff is construed as arguing futility with respect to the exhaustion of his claims against Defendant Freynick, this contention should not be found to excuse Plaintiff's undisputed failure to exhaust his Administrative remedies. As stated, Plaintiff has offered no reason or evidence as to why he did not properly re-file his Administrative remedies after he was advised and instructed how to do it. In any event, as stated below, the PLRA bars a futility exception to the exhaustion requirement. *See Fortune, supra* at * 7.

As Defendant recognizes, pursuant to *Spruill*, "[a] procedural default by the prisoner, either through late or improper filings, bars the prisoner from bringing a claim in federal court unless equitable considerations warrant review of the claim." (Doc. 18, p. 7). As this Court stated in *Fortune v. Bitner*, 2006 WL 2796158, * 7 (M.D. Pa.):

> Under the Prison Litigation Reform Act ("PLRA"), exhaustion
> of administrative remedies is required for all actions concerning
> prison conditions brought under federal law. *See* 42 U.S.C. § 1997e(a);
> *see Woodford v Ngo*, 126 S.Ct. 2378 (2006). The "exhaustion
> requirement applies to all inmate suits about prison life, whether
> they involve general circumstances or particular episodes, and
> whether they allege excessive force or some other wrong." *Porter v.
> Nussle*, 534 U.S. 516 (2002). "The PLRA attempts to eliminate

unwarranted federal-court interference with the administration of prisons, and thus seeks to afford corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Woodford*, 126 S.Ct. at 2387 (internal quotation and citation omitted). "The benefits of exhaustion can be realized only if the prison grievance system si given a fair opportunity to consider the grievance." *Id*. at 2388.

The PLRA mandates that inmates "properly" exhaust administrative remedies before filing suit in federal court. *Id*. at 2387. "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Id*. at 2386. Failure to substantially comply with the procedural requirements of the applicable prison's grievance system will result in a procedural default of the claim. *Spruill v. Gillis*, 372 F.3d 218, 227-32 (3d Cir. 2004). The PLRA "completely precludes a futility exception to its mandatory exhaustion requirement." *Nyhuis v. Reno*, 204 F.3d 65, 71 (3d Cir. 2002).

The *Fortune* Court also stated:

The PLRA's exhaustion requirement was designed to reduce the quantity and improve the quality of prisoner lawsuits, as well as afford corrections officials an opportunity to address complaints internally before allowing the initiation of a federal suit. *Woodford*, 126 S.Ct. at 2387-88 ("The benefits of exhaustion can be realized only if the prison grievance system is given a fair opportunity to consider the grievance."). The PLRA exhaustion requirement is satisfied if the Plaintiff files a grievance and appeals the denial of the grievance to the highest level possible, giving the prison "fair notice" of the claim and an opportunity to remedy it. To provide fair notice of a claim, the plaintiff must allege specific acts of mistreatment or misconduct and identify the responsible party or parties. *See Pack v. Martin*, 174 Fed. Appx. 256 (6th Cir. 2006); *Johnson v. Johnson*, 385 F.3d 503, 516 (5th Cir. 2004); *Burton v. Jones*, 321 F.3d 569, 575 (6th Cir. 2003). Although neither the Third Circuit Court of Appeals nor the Supreme Court has defined how specific an inmate's administrative grievance must be to place the prison on "fair notice" of a claim prior to pursuing it in federal court, the Supreme Court has held that

>    the prisoner's compliance with the agency's applicable administrative remedy process should be the yardstick for making such an assessment. *Woodford*, 126 S.Ct. at 2386; *Spruill*, 372 F.3d at 227-32.

*Id.*, * 9.

We agree with Defendant (Doc. 18, p. 8), and find that, based on the undisputed evidence Plaintiff did not exhaust his First Amendment retaliation claim and his Eighth Amendment denial of proper medical care claim he asserts in this case. Defendant has established, through his uncontested evidence, that Plaintiff has failed to exhaust any one of the three (3) possible administrative remedies he filed regarding his claims in this case. Thus, we shall recommend that Defendant's Summary Judgment Motion be granted.

## VI. Recommendation.

Based on the above, it is respectfully recommended that Defendant Freynick's Summary Judgment Motion **(Doc. 14)** be granted since Plaintiff has failed to exhaust his retaliation claim under the First Amendment and his claim under the Eighth Amendment against this Defendant. It is further recommended that judgment be entered in favor of Defendant Freynik and against Plaintiff.

        **s/ Thomas M. Blewitt**
        **THOMAS M. BLEWITT**
        **United States Magistrate Judge**

**Dated: May 22, 2007**

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOHNNY CYRUS, | : | CIVIL ACTION NO. **4:CV-06-2051** |
| Plaintiff | : | (Judge McClure) |
| v. | : | (Magistrate Judge Blewitt) |
| UNITED STATES OF AMERICA, et al., | : | |
| Defendants | : | |

## **NOTICE**

**NOTICE IS HEREBY GIVEN** that the undersigned has entered the foregoing **Report and Recommendation** dated **May 22, 2007.**

Any party may obtain a review of the Report and Recommendation pursuant to Rule 72.3, which provides:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within ten (10) days after being served with a copy thereof.  Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections.  The briefing requirements set forth in Local Rule 72.2 shall apply.  A judge shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge.  The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the

magistrate judge, making his or her own determination on the basis of that record.  The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

                                      **s/ Thomas M. Blewitt**
                                      **THOMAS M. BLEWITT**
                                      **United States Magistrate Judge**

**Dated: May 22, 2007**